UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------x    Index #
DAVID B. JACOBS,

                              Plaintiff,

    -against-                    (SI)

MICHAEL MOSTOW, HORACE WILLIAMS,
HERSCHEL WILLIAMS, ARNOLD GOLDBERG,
ROSEVELT UNION FREE SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE
ROOSEVELT UNION FREE SCHOOL DISTRICT
GLENN SIMMONS, THE AMERICAN ARBITRATION
ASSOCIATION, ARTHUR REGAL,
JASPAN SCHLESINGER, HOFFMAN, L.L.P.,
LAWRENCE TENENBAUM, STEVEN A. FAYER, M.D.,
PEARSON, RANDALL SOLOMON, M.D.,
NEW YORK STATE UNITED TEACHERS,
ROOSEVELT TEACHERS' ASSOCIATION,
THE NEW STATE TEACHERS' RETIREMENT SYSTEM,
THE STATE OF NEW YORK EDUCATION
DEPARTMENT, AND THE STATE OF NEW YORK,

                              Defendants.
---------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★    OCT 12 2005    ★

COMPLAINT LONG ISLAND OFFICE

CV 05 4808

**A JURY TRIAL IS
DEMANDED**

SEYBERT, J.

LINDSAY, M.

## SUMMARY STATEMENT

As a result of the plaintiff's grievance for back pay and salary status, the School District's Superintendent pursued a vindictive personal vendetta beginning with the baseless suspension of the plaintiff. He then set into motion a series of events designed to take on a life of their own. The continued abuse of power that followed resulted in the plaintiff's forced involuntary retirement.

To justify this wrongful suspension, the defendants, in their official capacities each contributed to or furthered the

-1-

creation of a "case" and paper trail, after the fact, to
provoke the frustration and resignation of the plaintiff.

As stated and described below, it is the plaintiff's
contention that the defendants committed acts of official
misconduct in their official capacities, acts of professional
gross and/or ordinary negligence, intentional acts, knowingly
and deliberately committed or omitted for the wrongful purpose
of damaging the plaintiff and forcing him to retire from his
position as a teacher.

### JURISDICTIONAL STATEMENT

Jurisdiction was based on a federal question pursuant to
28 USC Sections 1331 and 1343(3), this being an action
authorized by law to redress the deprivation under color of
state law, statute, custom and usage of a right, privilege, and
immunity secured to plaintiff by the Fifth, Sixth, Seventh,
Eighth and Fourteenth Amendments to the Constitution of the
State of New York. The plaintiff also invokes the pendant
jurisdiction of this Court.

Jurisdiction is based on the fact that this is also
an action of law to redress the deprivation under color of
state law, statute, custom and usage of a right, privilege, and
immunity secured to Plaintiffs by the Fourteenth Amendment to
the Constitution of the United States and 42 USC 1983, 1885 and
arising under the laws and statutes of the State of New York.
Relief pursuant to Title 28 U.S.C. Section 2201 and Rule 57 of
the F.R.C.P is also sought.

-2-

Plaintiff, complaining of the defendants, appearing pro-se, alleges as follows:

1. That at all times hereinafter mentioned the plaintiff was and still is a resident of the County of Nassau and the State of New York.

2. That at all times hereinafter mentioned the defendant, MICHAEL H. MOSTOW (hereinafter referred to as Mostow) was the District Superintendent of the ROOSEVELT UNION FREE SCHOOL DISTRICT Roosevelt, New York 11575 (hereinafter referred to as the RUFSD).

3. That at all times hereinafter mentioned the defendant, HORACE WILLAMS, was the District Superintendent of the RUFSD.

4. That at all times hereinafter mentioned the defendant, HERSCHEL WILLIAMS, was an Assistant District Superintendent in the RUFSD.

5. That at all times hereinafter mentioned the defendant, ARNOLD GOLDBERG, was an Assistant District Superintendent For Personnel in the RUFSD.

6. That at all times hereinafter mentioned the defendant, RUFSD, was and is a municipal corporation duly organized and authorized under and existing by virtue of the laws of the State of New York.

**-3-**

7. That the defendant, BOARD OF EDUCATION OF THE RUFSD at all times hereinafter mentioned was and is duly organized and existing under and existing by virtue of the laws of the State of New York.

8. That the defendant, GLENN SIMMONS, at all times hereinafter mentioned was a duly elected member of the BOARD OF EDUCATION OF THE RUFSD.

9. That at all times hereinafter mentioned the defendant, RUFSD was the plaintiff's employer.

10. That the defendant, American Arbitration Association, (hereinafter referred to as the AAA) is a private entity, one purpose of which is to supply Arbitrators to inquire, take evidence, conduct hearings, make rulings and render decisions in civil and administrative matters.

11. That the defendant, ARTHUR REGAL, at all times hereinafter mentioned was an employee of the AMERICAN ARBITRATION ASSOCIATION.

12. That the defendant, ARTHUR REGAL, at all times hereinafter mentioned was an independent contractor of the AMERICAN ARBITRATION ASSOCIATION.

13. That the defendant, JASPAN, SCHLESINGER, HOFFMAN, L.L.P., at all times hereinafter mentioned was and is a law firm duly authorized to practice Law in the State of New York.

14. That the defendant, LAWRENCE TENENBAUM, at all times hereinafter mentioned was an attorney authorized to practice

**-4-**

Law in the State of New York employed by the defendant, JASPAN SCHLESINGER, HOFFMAN, L.L.P.

15. That the defendant, STEVEN FAYER, M.D. was at all times hereinafter mentioned a duly licensed physician in the State of New York.

16. That upon information and belief the defendant PEARSON, is a foreign corporation doing business in New York.

17. That upon information and belief the defendant PEARSON, is a domestic corporation doing business in New York.

18. That the defendant, RANDALL SOLOMON, M.D., at all times hereinafter mentioned was and is a duly licensed physician in the State of New York.

19. That the defendant, NEW YORK STATE UNITED TEACHERS (hereinafter referred to as NYSUT) at all times hereinafter mentioned was and is the duly recognized bargaining agent for the plaintiff and the defendant, RUFSD.

20. That the defendant, NYSUT at all times hereinafter mentioned was and is the duly recognized representative for the plaintiff.

21. That the defendant, ROOSEVELT TEACHERS' ASSOCIATION, hereinafter referred to as the RTA) at all times hereinafter mentioned was and is the duly recognized bargaining agent for the plaintiff and the defendant, RUFSD.

-5-

22. That the defendant, THE NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, (hereinafter referred to as the NYTRS) at all times hereinafter mentioned was and is duly organized and existing under and existing by virtue of the laws of the State of New York.

23. That the defendant, THE STATE OF NEW YORK EDUCATION DEPARTMENT, hereinafter referred to as the NYSED) is a subdivision of the State of New York.

24. That the defendant, HORACE WILLIAMS, during the school year 2000-2004 was the Superintendent of the RUFSD.

25. That a NOTICE OF CLAIM upon which this action(s) is founded was presented to the municipal defendants on or about March 26, 2005.

26. That at least thirty days have elapsed, since the demand, notice of claim was presented to the municipal defendants for adjustment, and that all defendants have neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

27. That the municipal defendant, the Roosevelt UFSD, required the plaintiff to be examined as provided in section fifty-h of the General Municipal Law, and all the provisions of such section were complied with by the plaintiff.

28. That all other municipal defendants have waived the examination of the plaintiff as provided in section fifty-h of the General Municipal Law, and all the provisions of such section were complied with by the plaintiff.

**-6-**

29. That this action(s) has been brought within the periods set by the statutes of limitations founded on the claims and allegations herein presented and set forth.

30. That the plaintiff, DAVID B. JACOBS, was employed by the defendant, RUFSD, from approximately September 1994 as a regularly appointed Teacher of Science.

31. That the plaintiff, DAVID B. JACOBS, was at all times ready, willing and able to perform his professional duties pursuant to his contract of employment.

## AS AND FOR A FIRST CAUSE OF ACTION

32. The plaintiff repeats and realleges paragraphs 1 through 31 above.

33. That the plaintiff, DAVID B. JACOBS, was hired on the Ph.D. level at the beginning of the Fall, 1994 semester as a Teacher of Physics. Shortly after the term began it became apparent that the plaintiff was being paid on a Masters degree level and not equivalent to the Ph.D. level agreed upon. After having complained to the RTA, he was informed by the RTA that he would most likely be fired without a hearing, if he filed a grievance before he had attained tenure. Each defendant was

**-7-**

afraid to break step in the unspoken process with the powers that be.

34. After tenure was obtained the plaintiff, in or about September 1999 filed a grievance for back pay and status increase to Ph.D. level.

35. That just prior to the time that the grievance was to be arbitrated (circa. January 2000), the defendant, Michael Mostow, agreed to grant the plaintiff Ph.D. status and back pay on the Ph.D. level to September 1999.

36. The defendant RTA had discovered within the time that the grievance was being maintained that the defendant Michael Mostow, had, at least a year earlier, hired as a teacher an African American, and granted Ph.D. status to her, though she had the same degrees as the plaintiff, but had not disclosed that fact to the RTA. Such acts constituted racial discrimination

37. That upon being found out, the defendant, Michael Mostow, tried to settle the issues by issuing an immediate directive as described in paragraph 35 above. It took effect without plaintiff's assent.

38. That upon obtaining knowledge of this directive, the plaintiff approached the defendant, RTA and requested that a second grievance be filed (circa. February 2000) to obtain his back pay to the date of hiring, September 1994, as the original grievance was intended.

-8-

39.   That following this, the RTA met with the defendant, Mostow. The RTA representative informed the plaintiff that the defendant, Mostow, was livid at the suggestion of a second grievance and indicated that Mostow threatened to and would retaliate against the plaintiff, should the plaintiff file a second grievance.

40.   That the plaintiff directed the RTA to file a second grievance as described in paragraph 38 above.

41. That within approximately six weeks from the filing of the second grievance the plaintiff was handed a letter from the defendant, Mostow, dated March 23, 2000, that suspended the plaintiff from his teaching position, and directed him not to return to the RUFSD under threat of arrest for trespass, Exhibit "A" attached. The defendant, Mostow, initiated a malicious retaliatory process utilizing RUFSD resources, which was systematically accepted and ratified by the other defendants.

42. That the plaintiff was told to hand over his classroom, file cabinet and equipment storage room keys. The plaintiff was given a half-hour to leave the premises under threat of arrest.

43. That the plaintiff was directed in approximately May 2000 to return to the RUFSD by the defendant, Mostow.

44.   That the plaintiff was directed in approximately May 2000 by the defendant, Mostow, to sit in the Assistant Superintendent's office without an assignment of professional duties.

**-9-**

45. That between 1994 and 2004 school years there existed a collective bargaining agreement between the plaintiff and the defendant, ROOSEVELT UFSD.

46. That between 1994 and 2004 school years there existed a written contract of employment between the plaintiff and the defendant, ROOSEVELT UFSD.

47. That between 1994 and 2004 school years there existed a contract of employment between the plaintiff and the defendant, ROOSEVELT UFSD.

48. That the defendants, in their official capacities, for the purpose of injuring the plaintiff, committed acts relating to their offices constituting an unauthorized exercise of their official functions, knowing that such acts were unauthorized or done in an unauthorized manner, or refrained from performing duties which were imposed upon them by law or were clearly inherent in the nature of their offices and failed to make an adequate investigation before taking action to suspend the plaintiff with pay on or about March 23, 2000, from the ROOSEVELT UFSD.

49. That the defendants, neglected, failed and/or refused to carry out the New York State substantive law before taking action to suspend the plaintiff with pay on or about March 23, 2000.

50. That the defendants, neglected, failed and/or refused to perform the New York State statutory procedural steps before taking action to suspend the plaintiff with pay on or about

**-10-**

March 23, 2000.

51. That the defendants continued to neglect, refused and/or failed to give any reasonable interpretation to the provisions of the contract and the above mentioned employment.

52. That the defendants refused and/or failed to give any reasonable explanation or basis for suspending the plaintiff.

53. That the defendants failed to follow their own procedures before taking action to suspend the plaintiff with pay on or about March 23, 2000.

54. That the defendants breached the contract of employment between the plaintiff and the defendants by failing to act in good faith in following the procedures set forth in that contract before taking and after action was taken to suspend the plaintiff with pay on or about March 23, 2000.

55. That the defendants breached the contract of employment between the plaintiff and the defendants by suspending the plaintiff without just cause on or about March 23, 2000.

56. That the defendants, acting singularly or in complicity with one or more other defendants, acted with malice or in reckless or willful disregard of the plaintiff's rights.

57. That the defendants engaged in morally culpable conduct. The plaintiff seeks to recover compensatory as well as punitive damages from the defendants as a result of the said actions by the defendants, one or more of them.

-11-

58. That upon information and belief the defendants acting singularly, or in complicity with one or more other defendants, suspended the plaintiff with pay in unjustified retaliation because the plaintiff previously instituted a grievance to obtain back pay. The defendant(s) committed these acts with malice or in reckless or willful disregard of plaintiff's rights.

59. That the defendants wrongfully disciplined the plaintiff on March 23, 2000 without a hearing in violation of the New York State Education Law including, but not limited to section 3020(a) and related provisions.

60. That the defendants wrongfully and maliciously required the plaintiff to undergo a psychiatric examination pursuant to New York State Education Law 913 and related provisions.

60. That upon information and belief the defendants, acting singularly or in complicity with one or more other defendants, continued the suspension of the plaintiffs in order to place the plaintiff under emotional and economic duress via the threat of termination.

61. That the defendants' acts, acting singularly or in complicity with one or more other defendants described above, constituted wrongful interference with the plaintiff's contractual relations with the RUFSD.

62. That the defendant's acts, acting singularly or in complicity with one or more other defendants alleged above,

-12-

have and continue to intentionally, knowingly, deliberately and/or negligently caused the plaintiff irreparable harm in divesting him of control over the access of plaintiff's professional activities, his career as a teacher, access to other employment, thereby causing or contributing to plaintiff's anxiety and his diminished economic status in reckless disregard of his rights.

63. That upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants alleged above, had knowledge of the wrongful acts complained of, but nevertheless ratified the acts that the plaintiff was subjected to and/or have refused to take corrective or remedial action to date.

64. That the defendants, upon information and belief, acted singularly or in complicity with one or more other defendants alleged above, knowingly, to suspend the plaintiff in violation of the provisions of the contract of employment between the plaintiff and the defendant, RUFSD.

65. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants alleged above, acted negligently in suspending the plaintiff in violation of the contract of employment between the plaintiff and the defendants.

66. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants alleged above, acted intentionally in suspending the plaintiff in violation of the contract of employment between the plaintiff and the defendant, RUFSD.

-13-

67. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants alleged above, acted deliberately in suspending the plaintiff in violation of the contract of employment between the plaintiff and the defendant, RUFSD.

68. That the defendant's action compelled the plaintiff to engage legal counsel and/or initiate litigation to recover damages for said breach of contract and/or tortious conduct.

69. As a consequence of the above the plaintiff has suffered personal injuries.

70. At all material times and in doing the things alleged herein the defendants knew that the plaintiff was free from fault.

71. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants, acted fraudulently, oppressively, maliciously and outrageously by, being morally culpable towards the plaintiff, wrongfully suspending, continuing to suspend the plaintiff from his teaching responsibilities and/or denying the plaintiff's requests to be returned to the classroom as a teacher.

72. That in committing the acts complained of above, the defendants violated the plaintiff's constitutional rights, statutory rights and common law rights, including, but not limited to: practicing their professions with negligence on more than one occasion; in practicing their professions with gross negligence on a particular occasion; in practicing their

**-14-**

professions with incompetence on more than one occasion; in practicing their professions with gross incompetence; in engaging in conduct in the practice of their professions which evidenced a moral unfitness to practice; in willfully making or filing a false report or failing to file a report required by law and/or the department of health or education or willfully impeding or obstructing such filing, or inducing another person to do so; in violating New York State Education Law.

73. As a direct and proximate result of the conduct of the defendants, the plaintiff has, and upon information and belief, will continue to sustain substantial compensable losses such as salary, pension, social security, physician expenses, medical expenses, travel and other expenses, suffered embarrassment, humiliation, destruction of a lifetime's collection of teaching materials, professional files and equipment, the irreparable loss of credibility, severe emotional distress and discomfort, all to the plaintiff's detriment and damage in a sum of Five Million Dollars ($5,000,000.00).

## AS AND FOR A SECOND CAUSE OF ACTION

74. The plaintiff repeats and realleges paragraphs 1 through 74 above.

75. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants, acted wrongfully, intentionally, deliberately and/or negligently in that they used information that fell outside the statutory period in order to bring charges against the

**-15-**

plaintiff pursuant to New York State Education Law 3020(a) and related provisions.

76. That the defendants, upon information and belief, singularly or in complicity with one or more other defendants, acted wrongfully, intentionally, deliberately and/or negligently in that they selectively provided to other defendants false, misleading and/or distorted information to be used to justify the application of section 913 of the NYS Education Law.

77. The plaintiff repeats and realleges paragraph 73 above.

## **AS AND FOR A THIRD CAUSE OF ACTION**

78. The plaintiff repeats and realleges each and every paragraph numbered 1 through 77 above.

79. That beginning in 1994 and at all times related to the acts complained of the defendant, RUFSD, kept in the ordinary course of business a school file concerned with and related to the plaintiff. This file contained, not only the documentation placed there by the defendants, but was supposed to include the plaintiff's responses. The plaintiff at different times discovered documentation that he had never seen before without numbered pages, and at another time with all numbered pages, and then again at different time with the Superintendent's stamp affixed, which was not signed by him as received, had no notice of, and/or was not created by any of the plaintiff's supervisors. In short, the plaintiff's file was

**-16-**

invented and re-invented for the wrongful and malicious purposes at hand. Nothing in this file related to any act or omission on the part of the plaintiff that could form the basis for any disciplinary action as of February 2002. Nothing in this file refuted the plaintiff's mental or physical well-being or ability to perform the functions of a teacher. The defendant, Mostow wrongfully caused the plaintiff to be psychiatrically examined in retaliation for the plaintiff's second grievance for the purpose of creating a paper trail to cause the plaintiff to resign or provide a false premise for his dismissal as a teacher at the RUFSD.

80. That upon information and belief, at all material times and in doing the things alleged herein, the defendants knew that the plaintiff was free from any medical, psychological or psychiatric disorder, dysfunction, malady or disease that interfered with, impaired or diminished the plaintiff's capacity to perform his professional duties as a teacher.

81. That for all times mentioned the defendants supervised the plaintiff on a regular and continuing basis.

82. That a school file was kept in the ordinary and customary course of business by the defendants reflecting the activities, performance and conduct of the plaintiff.

83. That, upon information and belief, at different times between September 1994 and March 2003, documents were added, modified and removed from the plaintiff's school file without the plaintiff's knowledge or consent.

-17-

84. That, upon information and belief, there was no evidence contained in the above-mentioned school file of the plaintiff prior to March 23, 2000 that reflected any causal connection between the acts or omissions of the plaintiff and the demand that the plaintiff undergo a psychiatric examination.

85. That, upon information and belief, there was no evidence contained in the above-mentioned school file of the plaintiff prior to March 23, 2000 that reflected any causal connection between the acts or omissions of the plaintiff and the resulting suspension with pay by the defendants of the plaintiff.

86. That, upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants, acted with malice and/or in reckless or willful disregard of plaintiff's rights by engaging and pursuing a course of conduct that they knew or should have known would emotionally depress and economically diminish, impair and/or debilitate the plaintiff. The plaintiff seeks to recover punitive damages from the defendants as a result of such actions by the defendants, one or more of them as the evidence will demonstrate.

87. That, upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants, acted with malice and/or in reckless or willful disregard of plaintiff's rights by deliberately causing the plaintiff to be psychiatrically examined for the purpose of humiliating, embarrassing, and causing the plaintiff severe

**-18-**

emotional distress that would facilitate his retirement or dismissal.

88. That, upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants, deliberately caused the plaintiff to be psychiatrically examined to create a heretofore non-existent paper trail to demoralize the plaintiff and cause the plaintiff to either resign or to provide a false premise for his dismissal as a teacher.

89. That, upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants, maliciously contrived a false premise to wrongfully invoke section 913 of the NYS Education Law.

90. That, upon information and belief, the defendants, knowingly caused the plaintiff to be psychiatrically examined to create a heretofore non-existent paper trail to demoralize the plaintiff, to cause the plaintiff to resign and form the basis to dismiss the plaintiff from his position as a teacher.

91. That, upon information and belief, the defendants, acting singularly or in complicity with one or more other defendants, including, but not limited to ARNOLD GOLDBERG, HORACE WILLIAMS, HERSCHEL WILLIAMS AND LAWRENCE TENENBAUM, selectively culled from a continually changing file and transmitted false and/or incomplete documents to bias and prejudice the examining defendant psychiatrists.

**-19-**

92. That one or more of the documents transmitted to the examining psychiatrists could not be used as it was too remote in time to be used as part of a disciplinary proceeding.

93. That the defendant, RUFSD paid for a fraudulent report to be created and published.

94. That in committing the acts complained of above, the defendants violated the plaintiff's constitutional rights, statutory rights and common law rights.

95. The plaintiff repeats and realleges paragraph 73 above.

## AS AND FOR A FOURTH CAUSE OF ACTION

96. The plaintiff repeats and realleges each and every paragraph numbered 1 through 95 above.

97. That during the plaintiff's suspension, beginning on March 23, 2000, the plaintiff was directed to undergo a psychiatric examination. This was conducted on June 7, 2000 by the defendant, Steven Fayer, M.D., who, upon information and belief was selected by defendant, Mostow. That the defendant, RUFSD, in advance of this examination, transmitted to Dr. Fayer, approximately twenty selected documents, some from the plaintiff's school file without the plaintiff's consent or knowledge and not including any of the plaintiff's responses to any of this documentation. After interviewing the plaintiff and requiring the plaintiff to complete a questionnaire, the

-20-

defendant, Steven Fayer, M.D., sent the questionnaire to be evaluated by the defendant, PEARSON. PEARSON then generated a report based on an algorithm. In the introduction to test to which this algorithm is applied, the applicability of the test clearly did not apply to the plaintiff's circumstances. This report was sent to the defendant, Fayer, who then generated a report of his own based on PEARSON'S report and his own interview that was then transmitted to the RUFSD resulting in the plaintiff's continued suspension.

98. That the defendants, upon information and belief, acted, singularly or in complicity with one or more other defendants alleged above, without just cause, intentionally, deliberately, knowingly, fraudulently, oppressively, maliciously and/or outrageously contrived, designed and corrupted a process to force the plaintiff to retire or form the false premise to dismiss the plaintiff from his teaching position in the RUFSD.

99. That the defendants, upon information and belief, acted wrongfully in contriving this process, singularly or in complicity with one or more other defendants to force the plaintiff to retire or form the false premise to dismiss the plaintiff from his teaching position in the RUFSD.

100. That the defendant, STEVEN A. FAYER, M.D., a licensed physician in the State of New York was negligent in the interview, testing, assessment and/or the evaluation of the plaintiff, constituting medical (psychiatric) malpractice, causing the plaintiff the injuries and damage herein set forth.

-21-

101. That the defendant, his agents, servants and/or employees was guilty of medical (psychiatric) malpractice in failing, neglecting and/or refusing to properly review and/or consider plaintiff's prior history, test, examine, evaluate, measure, and/or assess, the plaintiff; in failing and/or neglecting to obtain an adequate history or diagnosing the plaintiff; in failing to investigate the medical/psychiatric history of the plaintiff; in failing to make a differential diagnosis; in failing to obtain reliable data; in failing to examine the causes for plaintiff's condition or obtaining any factual validation; in testing the plaintiff in a careless, negligent and unprofessional manner; in failing to correctly or properly diagnose the plaintiff; in failing to acknowledge the condition with which the plaintiff was coping at the time of his examination; in failing to possess and use the degree of diligence and skill ordinarily possessed by psychiatrists in the community at the time of the events complained of; in failing to use reasonable skill, care and diligence in the exercise of professional knowledge to accomplish the purpose for which the plaintiff was examined; in failing to take any effective and adequate means or measures to prevent further harm and/or injury to the plaintiff; in departing and deviating from standard and accepted procedures then and there obtaining in the community; in failing and omitting to take proper and suitable precautions for the safety of the plaintiff; in practicing his profession with negligence on more than one occasion; in practicing his profession with gross negligence on a particular occasion; in practicing his profession with incompetence on more than one occasion; in practicing his profession with gross incompetence; in engaging in conduct in the practice of medicine which evidenced moral unfitness to practice medicine; in willfully making or filing a false report

**-22-**

for pay, or failing to file a report required by law and/or
with the department of health or education, or willfully
impeding or obstructing such filing, or inducing another person
to do so; in violating New York State Education Law § 6530
paragraphs 4,5,6,20 and 21; and in failing and neglecting to
consider the signs, symptoms and/or reasons for the plaintiff's
behavior or actions.

102. That upon information and belief the defendants,
acting singularly or in complicity with one or more other
defendants, committed theses acts to wrongfully suspend the
plaintiff with pay, force the plaintiff to defend himself,
expend his own funds to refute these accusations, place the
plaintiff in a continuing debilitating position in unjustified
retaliation for the plaintiff instituting a grievance to obtain
back pay.

103. That the defendant(s) committed these acts with
malice or in reckless or willful disregard of plaintiff's
rights. That the defendants engaged in morally culpable
conduct.

104. The plaintiff repeats and realleges paragraph 73
above.

## AS AND FOR A FIFTH CAUSE OF ACTION

105. The plaintiff repeat and realleges each and every
paragraph 1 through 104.

106. That the defendant, RANDALL SOLOMON, M.D., a licensed physician in the State of New York consciously played out his hostility toward the plaintiff, in all likelihood because the plaintiff brought a forensic psychologist to monitor the examination and attempted to tape record said examination. The defendant bitterly objected to the use of a tape recorder. When the plaintiff was told to shut the recorder off, he stated that he needed to have a clear and complete record of the examination. It was clear from the defendant's demeanor thereafter that he was angered an defensive.

107.   That he was negligent in the interview, testing, assessment and/or the evaluation of the plaintiff, constituting medical (psychiatric) malpractice, causing the plaintiff the injuries and damage herein set forth.

108. That the defendant, his agents, servants and/or employees was guilty of medical (psychiatric) malpractice in failing, neglecting and/or refusing to properly review and/or consider plaintiff's prior history, test, examine, evaluate, measure, and/or assess, the plaintiff; in failing and/or neglecting to obtain an adequate history or diagnosing the plaintiff; in failing to investigate the medical/psychiatric history of the plaintiff; in failing to make a differential diagnosis; in failing to obtain reliable data; in failing to examine the causes for plaintiff's condition or obtaining any factual validation; in testing the plaintiff in a careless, negligent and unprofessional manner; in failing to correctly or properly diagnose the plaintiff; in failing to acknowledge the condition with which the plaintiff was coping at the time of his examination; in failing to possess and use the degree of

**-24-**

106. That the defendant, RANDALL SOLOMON, M.D., a licensed physician in the State of New York consciously played out his hostility toward the plaintiff, in all likelihood because the plaintiff brought a forensic psychologist to monitor the examination and attempted to tape record said examination. The defendant bitterly objected to the use of a tape recorder. When the plaintiff was told to shut the recorder off, he stated that he needed to have a clear and complete record of the examination. It was clear from the defendant's demeanor thereafter that he was angered and defensive.

107.   That he was negligent in the interview, testing, assessment and/or the evaluation of the plaintiff, constituting medical (psychiatric) malpractice, causing the plaintiff the injuries and damage herein set forth.

108. That the defendant, his agents, servants and/or employees was guilty of medical(psychiatric) malpractice in failing, neglecting and/or refusing to properly review and/or consider plaintiff's prior history, test, examine, evaluate, measure, and/or assess, the plaintiff; in failing and/or neglecting to obtain an adequate history or diagnosing the plaintiff; in failing to investigate the medical/psychiatric history of the plaintiff; in failing to make a differential diagnosis; in failing to obtain reliable data; in failing to examine the causes for plaintiff's condition or obtaining any factual validation; in testing the plaintiff in a careless, negligent and unprofessional manner; in failing to correctly or properly diagnose the plaintiff; in failing to acknowledge the condition with which the plaintiff was coping at the time of his examination; in failing to possess and use the degree of

**-24-**

diligence and skill ordinarily possessed by psychiatrists in the community at the time of the events complained of; in failing to use reasonable skill, care and diligence in the exercise of professional knowledge to accomplish the purpose for which the plaintiff was examined; in failing to take any effective and adequate means or measures to prevent further harm and/or injury to the plaintiff; in departing and deviating from standard and accepted procedures then and there obtaining in the community; in failing and omitting to take proper and suitable precautions for the safety of the plaintiff; in practicing his profession with negligence on more than one occasion; in practicing his profession with gross negligence on a particular occasion; in practicing his profession with incompetence on more than one occasion; in practicing his profession with gross incompetence; in engaging in conduct in the practice of medicine which evidences moral unfitness to practice medicine; acting in complicity with the intention of other defendants in willfully making or filing a false report for pay, or failing to file a report required by law or by the department of health or the education department, or willfully impeding or obstructing such filing, or inducing another person to do so; in violating New York State Education Law § 6530 paragraphs 4,5,6,20 and 21; and in failing and neglecting to consider the signs, symptoms and/or reasons for the plaintiff's behavior or actions.

109. That upon information and belief the defendant, acting singularly or in complicity with one or more other defendants, committed theses acts to wrongfully suspend the plaintiff with pay, force the plaintiff to defend himself, expend his own funds to refute the charges, place the plaintiff in a continuing debilitating position in unjustified

**-25-**

retaliation for the plaintiff instituting a grievance to obtain back pay.

110. That the defendant committed these acts with malice or in reckless or willful disregard of plaintiff's rights. That the defendant engaged in morally culpable conduct.

111. The plaintiff repeats and realleges paragraph 73 above.

## AS AND FOR A SIXTH CAUSE OF ACTION

112. The plaintiff repeats and realleges each and every paragraph 1 through 111.

113. For approximately four years beginning in March 2000 the defendants, acting singularly or in complicity with one or more other defendants, continued this corrupt process. The plaintiff was repeatedly shifted from one room to another, given non-teaching and/or non-professional duties without meaningful aid or assistance. During these three years the plaintiff was directed in part to design, create and develop Science curriculum for grades K-12, when the defendants knew or should have known that the plaintiff had no knowledge, background, experience in such area. The defendants intentionally frustrated the plaintiff by refusing to provide him with any meaningful assistance. The defendants actually refused to permit the plaintiff to use the school library, computers, speak to colleagues, and obtain resource information

**-26-**

from school personnel. The defendants permitted the plaintiff to work outside the school premises to perform his responsibilities only to stop him when he was showing signs of making progress. In addition, for about a year and a half the plaintiff was directed to call parents to inform them of their child's absence from school. The plaintiff was also directed to train and assist another teacher in Science to perform Science demonstrations only to be told that he could not have access to Science equipment or chemicals.

114. That on or about February 2003 the defendants, acting singularly or in complicity with one or more other defendants, intentionally, and wrongfully contrived, designed and brought charges and specifications against the plaintiff to remove him and terminate him from his employment with the RUFSD.

115. That the defendants, their agents, servants and/or employees intentionally, wrongfully and/or negligently initiated a process pursuant to New York State Education Law 3020(a) and related provisions against the plaintiff that they knew or should have known were grounded and based in their own corrupt and culpable conduct.

116. That the defendant(s) committed these acts with malice or in reckless or willful disregard of plaintiff's rights.

117. That these acts constituted state action in violation of the plaintiff's constitutional, statutory and common law rights, both under New York State Laws and the recognized Federal Laws.

-27-

118. The plaintiff repeats and realleges paragraph 73 above.

## AS AND FOR A SEVENTH CAUSE OF ACTION

119. The plaintiff repeats and realleges each and every paragraph 1 through 118.

120. Upon knowledge in part, and information and belief, as a member of the RTA the plaintiff was entitled to a assistance by the RTA, including, but not limited to matters involving breaches of contract and/or tortuous conduct, reasonable foreseeable, committed or intended by the RUFSD. It was, in the plaintiff's view, part of the services that the plaintiff expected in return for his union dues.  The RTA and NYSUT were put on notice well in advance of the charges and psychiatric examinations conducted, that in the plaintiff's view, the RUFSD was going to retaliate against the plaintiff for bringing a second grievance. Both were told that documents in the plaintiff's school file were there in violation of the plaintiff's rights under the contract with the RUFSD. Through its president, the RTA, notified the plaintiff that a grievance to remove illegitimate documents from the plaintiff school file had been initiated and filed in 2002. The plaintiff repeatedly questioned different members of the RTA from time to time regarding the status of that grievance. Each time the plaintiff was advised that the grievance was in process. In 2004, during the arbitration proceedings the RTA president informed the plaintiff that, in fact, no grievance was ever filed by Diane

**-28-**

McCarthy, the RTA person responsible, and that RTA decided not to bring a grievance to remove the documents.

Furthermore, the plaintiff sent letters to NYSUT to initiate legal proceedings to enjoin and prohibit the RUFSD from continuing the plaintiff's suspension, return him to the classroom, prevent further psychiatric examinations and to obtain new counsel, different from those selected to represent the plaintiff in the 3020(a) proceeding. In addition NYSUT informed the plaintiff that he should retire, take the required conditional reinstatement examination, and upon passing it rescind his retirement and go back to work. NYSUT and the RTA advised the plaintiff that he had a year to rescind his retirement from the date it went into effect. The plaintiff followed this advice and retired. The RTA and NYSUT informed the plaintiff that unless he irrevocably retired, the RUFSD would not continue his cost free medical coverage. The plaintiff was informed by the NYSTRS that this was not true. The plaintiff subsequently learned that all these representations were also false.

121. That the plaintiff was at all times hereinafter mentioned a member of the RTA.

122. That upon information and belief the RTA is the Teachers' Union, representing the plaintiff and other teachers in the RUFSD.

123. That upon information and belief there is a Union agreement with the defendant, NSUT, a private body associated with the RTA to provide services, including, but not limited to grievance protection, legal defense and counsel to member teachers in the RUFSD.

-29-

124. As a result of the foregoing, the plaintiff required the defendant NYSUT to investigate, take steps to prevent and defend the plaintiff in the New York State 3020(a) hearing.

125. That this defendant, its agents, servants and/or employees breached this contract and were guilty of legal malpractice in failing, neglecting and/or refusing to properly review and/or consider plaintiff's prior history, test, examine, evaluate, measure, and/or assess, the plaintiff's condition and/or conduct; in failing and/or neglecting to obtain an adequate history of the plaintiff; in failing to investigate the actions taken by the RUFSD against the plaintiff; in defending the plaintiff in a careless, negligent and unprofessional manner; in failing to adequately provide legal counsel by failing to gather information, interview witnesses, effectively cross-examine witnesses; in making false and/or misleading statements to the plaintiff; in requiring the plaintiff to expend his own funds in his own defense as part of the 3020(a) proceeding prosecuted by the State of New York, its political subdivisions including the RUFSD; in failing to demand and/or argue that the plaintiff was entitled to a three member arbitration panel and not a single arbitrator; in failing to plead and/or argue that the plaintiff had already been wrongfully disciplined without charges or specifications and punished without a hearing in March 2000; in failing to plead or argue that neither the RUFSD or the New York Education Department had jurisdiction to initiate or prosecute charges or specifications for which the plaintiff had already been disciplined and punished without a hearing; in failing to plead or argue that neither the RUFSD or the New York Education Department had jurisdiction to initiate or prosecute charges or

-30-

specifications based on evidence outside the statute of
limitations within the constraints of The New York State
Education Law; in failing to plead or argue that the actions of
the RUFSD and the NYS Education Department constituted state
action in violation of the plaintiffs constitutional, statutory
and common law rights; in failing to prosecute a grievance to
restrict and/or remove certain documents from the plaintiff's
school file; in failing to correct known errors in the
plaintiff's physician's reports; in failing to inform the
arbitrator at the 3020(a) hearing of these and other errors not
of the plaintiff's making; in failing to possess and use the
degree of diligence and skill ordinarily possessed by attorneys
in the community at the time of the events complained of; in
failing to use reasonable skill, care and diligence in the
exercise of professional knowledge to accomplish the purpose
for which the defendant's assistance was required; in failing
to take any effective and adequate means or measures to prevent
further harm and/or injury to the plaintiff; in departing and
deviating from standard and accepted procedures then and there
obtaining in the community; in failing and omitting to take
proper and suitable precautions for the effective assistance of
counsel for the plaintiff's benefit; and in requiring the
plaintiff to pay for this assistance.

126. The plaintiff repeats and realleges paragraph 73
above.

## AS AND FOR A EIGHTH CAUSE OF ACTION

127. The plaintiff repeats and realleges each and every paragraph 1 through 126 above.

128. That upon information and belief the defendant, American Arbitration Association, (AAA) is a private entity, one purpose of which is to supply arbitrators to inquire, take evidence, conduct hearings, make rulings and render decisions in civil and administrative matters.

129. That upon information and belief the AAA employed the defendant, Arthur Regal, to act in the capacity as an Arbitrator from time to time.

130. That upon information and belief the defendant Arthur Regal, was selected by the defendants NYSUT and JASPAN SCHLESINGER, HOFFMAN, L.L.P., to act as the arbitrator in the 3020(a) hearing concerning the plaintiff.

131. That the defendant Arthur Regal, was inadequate by training, education, experience and intelligence to the task given to him.

132. That this defendant, AAA was negligent in hiring the defendant, Arthur Regal to serve as arbitrator in the matter of the plaintiff.

133. That this defendant, Arthur Regal was negligent in serving as the arbitrator in the matter of the plaintiff.

-32-

134. That this defendant, AAA, its agents, servants and/or employees breached its contract with NYSUT and the plaintiff, as a third party beneficiary; in failing, neglecting and/or refusing to properly review and/or consider Arthur Regal's prior history, skills, education, background, experience and/or to test, examine, evaluate, measure, and/or assess, his adequacy as a condition of his employment in serving as the single arbitrator in the matter of the plaintiff.

135. That this defendant, AAA, its agents, servants and/or employees were negligent in serving in a careless, negligent and unprofessional manner; in failing to adequately inquire, gather information, interview witnesses, effectively cross-examine witnesses; in failing to correct known errors in the plaintiff's physician's reports; in being inadequate to determine the accuracy, truth or falsity of information provided at the plaintiff's 3020(a) hearing; in lacking the subject matter jurisdiction to determine the issues in the plaintiff's 3020(a) hearing; in failing to possess and use the degree of diligence and skill ordinarily possessed by arbitrators in the community at the time of the events complained of; in failing to give proper and appropriate credence to the testimony of plaintiff's eminently qualified psychologist and psychiatrist; in failing to use reasonable skill, care and diligence in the exercise of professional knowledge to accomplish the purpose for which the defendant was required; in failing to take any effective and adequate means or measures to prevent further harm and/or injury to the plaintiff; in departing and deviating from standard and accepted procedures then and there obtaining in the community; and in failing and omitting to take proper and suitable

-33-

precautions for the effective assistance of counsel for the plaintiff's benefit.

136. The plaintiff repeats and realleges paragraph 73 above.

## AS AND FOR A NINETH CAUSE OF ACTION

137. The plaintiff repeats and realleges each paragraph number 1 through 136 above.

138. The provisions of the NYS Education Law including, but not limited to section 3020 and 3020(a) and subsequent amendments and revisions had for a long time provided for a three member panel and not a single arbitrator in such situations as the plaintiff was charged. Sometime after the substantive provisions governing 3020(a) proceedings were initiated in this State, the provisions governing the number of arbitrators was amended to provide in some instances for a single arbitrator. In the plaintiff's view these amendments could not and should not have been applied to the plaintiff's hearing.

139. That the provisions of the NYS Education Law §3020 and subsequent amendments and revisions providing for a single arbitrator in such situations as the plaintiff's denied the plaintiff due process of law and are void and/or unconstitutional.

-34-

140. That the defendants, THE NEW STATE TEACHERS' RETIREMENT SYSTEM, THE STATE OF NEW YORK EDUCATION and the DEPARTMENT, are political subdivisions of the defendant, State of New York.

141. That by virtue of the wrongful actions in violating 42 U.S.C. 1983 and the parallel provisions of the statutes, laws and constitution of the State of New York the defendants agents, servant and or employees, these defendants have denied the plaintiff due process of law.

142. That by virtue of the actions of these defendants, they have authorized and/or ratified the wrongful actions of the other defendants.

143. That these acts constituted state action in violation of the plaintiff's constitutional, statutory and common law rights, both under New York State Laws and the recognized Federal Laws.

144. The plaintiff repeats and realleges paragraph 73 above.


## **AS AND FOR A TENTH CAUSE OF ACTION**


145. The plaintiff repeats and realleges each and every paragraph numbered 1 through 144 above.

-35-

146. That the defendant, PEARSON, was the organization that performed the evaluation of the testing that the plaintiff underwent as part of the examination by the defendant Fayer. Upon information and belief the test given to the plaintiff was the wrong test for the purpose intended and given under the wrong circumstances. Someone, unknown at this time erroneously evaluated the data by using an inappropriate and/or defective algorithm. PEARSON, its agent, servant and/or employees discriminated in selecting answers described as "noteworthy" and provided erroneous outputs that reflected such responses.

147. That the defendant, PEARSON, was negligent in the interview, testing, assessment and/or the evaluation of the plaintiff, constituting negligence and/or malpractice, causing the plaintiff the injuries and damage herein set forth.

148. That the defendant, its agents, servants and/or employees was guilty of negligence and/or medical malpractice in failing, neglecting and/or refusing to properly review and/or consider plaintiff's prior history, test, examine, evaluate, measure, and/or assess, the plaintiff; in failing and/or neglecting to obtain sufficient information concerning the plaintiff; in failing to investigate the medical/mental/psychiatric history of the plaintiff; in failing to make a differential diagnosis; in testing the plaintiff in a careless, negligent and unprofessional manner; in failing to correctly or adequately diagnose the plaintiff; in failing to possess and use the degree of diligence and skill ordinarily possessed by similar organizations or psychiatrists in the community at the time of the events complained of; in failing to use reasonable skill, care and diligence in the exercise of professional knowledge to accomplish the purpose for which the

**-36-**

plaintiff was examined; in failing to take any effective and adequate means or measures to prevent further harm and/or injury to the plaintiff; in departing and deviating from standard and accepted procedures then and there existing in the community; in failing and omitting to take proper and suitable precautions for the safety of the plaintiff.

149. The plaintiff repeats and realleges paragraph 73 above.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

150. The plaintiff repeats and realleges each and every paragraph numbered 1 through 149.

151. The plaintiff had, over the years accumulated a large number of lesson plans, copies of Chemistry, Biology, Earth Science, and Physics books, years of systematically accumulated teaching materials, chemicals and laboratory apparatus. He kept them in his storage places in the RUFSD. Without his knowledge or consent most of this equipment was removed and/or piled up in the basement and/or different classrooms. The principal at the time ordered the materials safely stored until he made a decision concerning such items. However, when the plaintiff was suspended in March 2000, most of the items were either thrown out or removed from the plaintiff's storage rooms to the basement or some other place in or out of the school building. When the plaintiff was suspended and ordered out of the building, some of these items remained. The plaintiff was not allowed access to them from March 23, 2000 to date.

-37-

152. That, upon information and belief, on or about March-May, 2000 the defendants, intentionally, negligently, wrongfully used, removed, destroyed and/or discarded the plaintiff's accumulated chemicals, equipment, books and/or teaching materials and files without privilege or consent. The plaintiff observed some of his materials stacked at the garbage removal location and notified the defendants in May 2000 upon his return. These items were, upon information and belief removed from the school premises and in some fashion disposed. The defendant RUFSD continues, upon information and belief to hold the remaining items in its possession and control. That during the course of the time from March 2000 to date the plaintiff has been refused access to any of these materials.

153. As a result of the foregoing, the plaintiff sustained personal economic loss, including some specialty items, which cannot be replaced and presently require reproduction and/or purchase. The plaintiff seeks damages for these losses of his personal property in this action in the sum of One Hundred Thousand Dollars ($100,000.00).

## AS AND FOR AN TWELETH CAUSE OF ACTION

154. The plaintiff repeats and realleges each and every paragraph numbered 1 through 152.

155. The actions of the defendants RUFSD, NYSED, NYSTRS, and AAA, in the plaintiff's view, constituted state actions in violation of the plaintiff's state and federal rights as

**-38-**

defined by the New York State Constitution, its statutes, and common law along with parallel provisions of the Federal Law including, but not limited to the laws against discrimination and 42 U.S.C. 1983, 1985. The plaintiff claims that he was involuntarily forced to retire and apply to the NYSTRS for his pension because of the arbitrator's findings, conclusions and penalty. Should the plaintiff prevail, he requires an order directing the RUFSD and NYSTRS to reinstate him without loss of status.

156. As a direct and proximate result of the conduct of the defendants, and the ratification of these acts by the other defendants, the plaintiff has, and upon information and belief will continue to sustain substantial compensable losses such as salary, social security, pension, physician expenses, medical expenses, travel and other expenses, suffered embarrassment, humiliation, severe emotional distress and discomfort, all to the plaintiff's detriment and damage in a sum of Five Million Dollars ($5,000,000.00). The plaintiff also requires a declaratory judgment fashioning such relief as directing the NYSTRS to reinstate the plaintiff to the retirement system and credit him with any losses sustained to date.

## AS AND FOR AN THIRTEENTH CAUSE OF ACTION

157. The plaintiff repeats and realleges each and every paragraph numbered 1 through 155 above.

158. The defendant LAWRENCE TENENBAUM, Esq. was at all times hereinafter mentioned a duly licensed attorney authorized

**-39-**

to practice law in the state of New York and employed by the
defendant, JASPAN, SCHLESINGER, HOFFMAN, L.L.P. It is the
plaintiff's contention that he knowingly and maliciously
cooperated with the RUFSD to further their corrupt agenda by
fabricating an outrageous, biased, defamatory letter to
influence and predetermine the outcome of plaintiff's
examination. Upon information and belief, either acting
singularly or in complicity with one or more other defendants
alleged above, and without just cause, he intentionally,
deliberately and knowingly published this contrivance. These
defendants JASPAN, SCHLESINGER, HOFFMAN, L.L.P., Tenenbaum
and/or Arnold Goldberg then did the same with defendant Solomon
for the same purpose. The defendants JASPAN, SCHLESINGER,
HOFFMAN, L.L.P., Tenenbaum and/or defendant, Goldberg did this
maliciously to corrupt and prejudice the process. They ratified
each other's acts. Not only did these defendants choose the
documents that were sent to the examining physicians, but they
also selectively discriminated in choosing documents that were
not accompanied by the plaintiff's responses. They knowingly
and deliberately chose not to include any documents that would
or could be viewed as favorable toward the plaintiff.  They
also selected documents that were beyond the statute of
limitations and could not be used as a basis for discipline of
the plaintiff. They did these things without privilege in law
and without the consent of the plaintiff.

   159. As a direct and proximate result of the conduct of
the defendants, the plaintiff has, and upon information and
belief will continue to sustain substantial compensable losses
such as salary, pension, social security, physician expenses,
medical expenses, travel and other expenses, suffered
embarrassment, humiliation, destruction of a lifetime's

collection of teaching materials, professional files and
equipment, severe emotional distress and discomfort, and will
in the future be deprived of earning any adequate livelihood in
the public school system, all to the plaintiff's detriment and
damage in a sum of Five Million Dollars ($5,000,000.00).


WHEREFORE, the plaintiff demands judgment against the
defendants in money damages in the sum of Five Million Dollars
($5,000,000.00) together with punitive damages, equitable
relief, attorney's fees, interest, costs and disbursements of
this action and whatever other and further relief this court
may deem just and proper.

Dated: Freeport, New York
       October 9, 2005

                                Yours, etc.,
                                DAVID B. JACOBS
                                For Plaintiff, pro-se
                                145 Smith Street
                                Freeport, New York 11520
                                516 868-4591

-41-

# EXHIBIT

# "A"

# Roosevelt Union Free School District

ADMINISTRATIVE OFFICES 240 Denton Place Roosevelt, NY 11575 Tel: (516) 867-8600 Fax: (516) 579-0178

Board of Education
Sheri Johnson, President
Stephen Budhu, Vice President
Martha Bedard
Mark Davis
Glenn Simmons

Michael H. Mostow
Superintendent of Schools

To:        Mr. David Jacobs

From:      Michael Mostow

Re:        Suspension

Date:      March 23, 2000

Please be advised that you are hereby suspended, with pay, until further notice. You are not permitted to enter or remain on school property for any reason without my prior consent.

Please be further advised that your unauthorized presence on school property will subject you to disciplinary action as well as ejection and prosecution for trespassing.